UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK POPOVICH,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>IGBINOSA, et al.,<br><br>　　　　　　Defendants. | 1:19-cv-01758-GSA-PC<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br>**(ECF No. 1.)**<br><br>**THIRTY-DAY DEADLINE TO FILE FIRST AMENDED COMPLAINT** |

**I.　BACKGROUND**

Frank Joseph Popovich ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action under 42 U.S.C. § 1983. On December 14, 2019, Plaintiff filed the Complaint commencing this action, which is now before the court for screening. 28 U.S.C. § 1915. (ECF No. 1.)

**II.　SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at California Medical Facility in Vacaville, California. The events at issue in the Complaint allegedly occurred at North Kern State Prison (NKSP) in Delano, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants Ngozi Igbinosa (Referring & Attending, NKSP), Raul Bravo (RN), Ndakwe Odeluga (CME), Angulo Jesus (RN), Maricrus Sagasi (RN), Mary Grace Patolinghug (LVN), Vejay Patel (CP & S), Carlos Lopez (RN), Melissa Walker (RN), Alexander Austria (P&S), Antoinette Sob (RN), Dora Espinoza (LVN), Afron Alphonse (P&S), Calvin William (HCARN Administrator), P. Rodriguez (CCRA), Abraham Nisim (Surgeon-GI at San Joaquin Adventist Hospital, Bakersfield), Kelly Santora (Warden, NKSP), M. Ortiz (CCI, NKSP), State of California, CDCR, and NKSP (collectively, "Defendants").

A summary of Plaintiff's allegations follows:

**Medical Care**

On June 28, 2018, Plaintiff arrived at NKSP. This is Plaintiff's first term in prison at the age of 55 years. Plaintiff was evaluated by medical staff for his medical history. His blood pressure was 108/68, weight 208 pounds, and height 5' 11". Plaintiff's record showed no acute distress, no intentional weight loss, no rectal bleeding, no recent weight changes, no fever, and no fatigue. Plaintiff denied having loss of appetite, change in his bowel movements, nausea, vomiting, frequent diarrhea, painful bowel movements, constipation, rectal bleeding, blood in his stool, abdominal pain, or vomiting blood. There was no past history of diverticulitis or colitis.

On July 7, 2018, Plaintiff submitted a medical request for suppositories and ointment because of a sudden problem with swollen and bleeding hemorrhoids, which he had never experienced before. After turning in the medical request Plaintiff began experiencing abdominal pain and diarrhea that lasted throughout the weekend.

On July 11, 2018, Plaintiff was seen in the clinic at NKSP by defendants Raul Bravo (RN) and Ndakwe Odeluga (CME). Plaintiff's pain level was a 9 out of 10, and he told them that he had had severe abdominal pain and diarrhea since the evening of July 7, 2018 and was having trouble eating because of the pain, diarrhea, and nausea. Plaintiff was told that he was only there to be seen about the hemorrhoids and that he would need to submit another medical request for the abdominal pain and diarrhea. It takes a couple of days for a medical request form 7362 MRF to be processed, and sometimes it doesn't happen for several reasons. Plaintiff was given patient educational materials for hemorrhoids and sent on his way.

Plaintiff only received suppositories at pill call and no ointment. The education materials recommended a 20-minute warm water sitz bath 3 to 4 times a day to ease the pain, with ice on the painful areas in between the baths. When Plaintiff asked the nurse at pill call about the sitz baths and ice, she practically laughed at him. Inmates at NKSP were lucky to get three showers a week. Plaintiff filled out a medical request for the abdominal pain and diarrhea, stating that he was afraid to eat because of the pain.

On July 13, 2018, Plaintiff was seen at the clinic by defendant Angulo Jesus (RN). No

vitals were taken. Defendant Jesus wanted to do a rectal exam without a doctor present, which Plaintiff refused. Plaintiff told defendant Jesus that he had blood in his diarrhea. No doctor was ever consulted. Defendant Jesus acted with deliberate indifference to Plaintiff's medical needs.

On July 15, 2018, Plaintiff was seen at the clinic by defendants Maricrus Sagisi (RN), Mary Patolinghug (LVN), and Vejay Patel (CP&S). Plaintiff's blood pressure was 107/73 and his weight was 198 pounds. Plaintiff's loss of 10 pounds in 8 days was ignored. Plaintiff thought he was being seen about his abdominal pain, diarrhea, and rectal bleeding as a follow up, but they were more interested in the Ambulatory Patient Summary Follow Up to take away Plaintiff's much-needed walker and replace it with a cane. Plaintiff's requests for relief from abdominal pain, diarrhea, and bloody stools were ignored again. Plaintiff was given patient education materials for "coronary artery disease" and "back pain" and sent on his way. All of the defendants acted as if they did not care about Plaintiff's medical needs.

On July 18, 2018, Plaintiff sent in another medical request because he was still suffering from acute abdominal pain and bloody diarrhea. Plaintiff informed defendants that he was forcing himself to eat because of the nausea. He was also fatigued and having over 6 bowel movements per day. The outside temperatures were around 106 degrees and Plaintiff was locked in his cell for 23 hours per day without air conditioning, which made his pain and suffering worse.

On July 19, 2018, Plaintiff was seen at the clinic by defendant Carlos Lopez (RN). Plaintiff's blood pressure was 93/63 and weight was 192 pounds, with a loss of 16 pounds in 12 days. Plaintiff was sent to TTA and seen by defendants Melissa Walker (RN) and Alexander Austria (P&S). Plaintiff told them about his issues and was given an x-ray, EKG, and rectal exam. Plaintiff was prescribed bismuth subsalicylate 262 mg. (Pepto Bismol tablets) for three days and given patient education materials for "colitis" and "abdominal pain." All of the patient education materials he was given to date said to seek immediate medical help because of the seriousness of the symptoms. There had been no proper diagnosis or treatment for dehydration at this time. This was obviously a very serious medical issue that had been going on for almost two weeks.

After going back to his unit, Plaintiff was called out to the clinic to see defendant Patel.

Defendant Patel took away Plaintiff's walker and gave him a cane. Nothing was said about Plaintiff's abdominal pain, weight loss, low blood pressure, bloody diarrhea, or fatigue.

On July 23, 2018, Plaintiff felt bad, had chest pains in the morning and took a couple of nitro glycerin pills. The pills seemed to help a little. Plaintiff still had abdominal pain and diarrhea. It had been a few days since he had anything to drink or eat because of the intense abdominal pain. The Pepto Bismol was not helping at all. Plaintiff went "man down" because he was very dizzy and could not stand for fear of falling down. His chest pain also became unbearable. Plaintiff was taken to TTA and seen by defendants Sob (RN) and Austria (P&S). His blood pressure was 93/67, which indicated dehydration that was not addressed. They noted on the report that Plaintiff had no diarrhea or abdominal pain, which was NOT TRUE AT ALL. That is all that Plaintiff had been complaining about for weeks. Plaintiff received no diagnosis or treatment, only an EKG that was normal. At no time was he treated for dehydration. Plaintiff had been complaining for 16 days about his abdominal pain and bloody diarrhea with no relief.

On July 24, 2018, Plaintiff was called in for a follow-up at TTA for the episodes on July 19, 2018 and July 23, 2018. Plaintiff was seen by defendants Dora Espinoza (LVN), Maricrus Sagisi (RN), and Afron Alphonse (P&S). Plaintiff's blood pressure was 100/70 and his weight was 184 pounds, a loss of 24 pounds in 17 days, which was not noted or considered serious in their minds for reasons that cannot be understood. They did note that Plaintiff was complaining about abdominal pain and diarrhea, with the pain in the left lower quadrant and a loss of appetite. Defendants failed to note the history of nausea or bloody diarrhea that he had told them about. The staff noted that Plaintiff had "no intentional weight loss," which was not true. Plaintiff had lost 24 pounds in 17 days, which was significant. A stool screening and ciprofloxacin (antibiotic) were ordered for suspected diverticulitis.

On July 27, 2018, Plaintiff sent in a medical request for a refill on the suppositories and a 602 HC medical grievance because he had not received the antibiotics that were ordered on July 24. On July 29, 2018, Plaintiff finally received the antibiotics after 22 days of abdominal pain and diarrhea. On July 30, 2018, Plaintiff was still having severe abdominal pain and bloody diarrhea, nausea, fatigue, and dizziness. Plaintiff had not eaten in almost two weeks because the

educational materials recommended fasting. Plaintiff went "man down" because of weakness.

Chanda Gunpae (LVN) [not a defendant], Ligan (LVN) [not a defendant], Battles (LVN) [not a defendant], Kalekea (P&S) [not a defendant], Coronado (CNA) [not a defendant], Onenyni (LVN) [not a defendant] and defendants Walker (RN), Lopez (RN), and Sob (RN) were all reported to have been involved in Plaintiff's care at this time, but he cannot remember much of that day. Plaintiff never met with defendant Igbinosa.

Plaintiff was hooked up to an IV and transported to San Joaquin Adventist Hospital in Bakersfield, CA. Plaintiff's blood pressure was 95/66 and his weight was 168 pounds, a loss of 40 pounds in three weeks. Plaintiff had tests and a colonoscopy and was diagnosed with mild to moderate ulcerative pancolitis. He was told that he had picked up a bacteria at NKSP and his auto-immune system began to fight it as it was destroying his body too. That caused the damage to Plaintiff's lower intestines. The delay in diagnosis and treatment caused the severity of the disease, and deliberate indifference by the medical staff caused the damage to his body.

Defendant Nisim (Surgeon) wanted to do a colostomy right away and never discussed alternatives. Plaintiff requested to be treated with medicine first and was treated with antibiotics and later with colitis medication after Plaintiff requested it. The medication had to be approved, probably by defendant Igbinosa, and it appears the approval process is inadequate. It is general practice in the CCHCS not to do what the treating doctor at the hospital or a consultant suggests for treatment. Defendant Dr. Igbinosa did not know much about Plaintiff's disease, or Plaintiff would not have a bag attached to the side of his body with his intestines sticking into it.

At the hospital, Plaintiff continued to have bloody diarrhea and was in a lot of pain. Plaintiff was shackled to the bed and had to ask to be unshackled frequently to use the restroom. After a week in the hospital Plaintiff was given colitis medication.

On August 12, 2018, Plaintiff was recalled back to NKSP even though he was not any better. He was taken to x-ray where he was required to stand up. He began to get dizzy and went into shock. Plaintiff was rushed into the ICU where he was given blood transfusions. His diarrhea was pure blood.

On August 14, 2018, Plaintiff went into septic shock and was rushed into surgery where

he was given an ileostomy removing all of his large intestines. After surgery Plaintiff retained fluids and his scrotum swelled to the size of a large grapefruit. Now Plaintiff cannot ejaculate and his urinary stream has been weakened. Plaintiff was diagnosed with DVT[1] in both arms because of the multiple IVs and blood draws, and also being handcuffed to the hospital bed for over two weeks. It was almost a month before Plaintiff began to regain the feeling in his feet because of the leg shackles.

On August 23, 2018, Plaintiff was transferred to Wasco State Prison infirmary. On August 28, 2018, defendant Dr. Nisim removed approximately 36 staples and Plaintiff went into shock. The incision ran from the pubic bone to the rib cage, and the staples were removed too early. The incision was not properly closed and began to open. Plaintiff began going into shock again just a couple of blocks from the hospital and called out to the two correctional officers but was ignored. Plaintiff passed out and came to as they arrived back at Wasco State Prison.

On August 30, 2018, Plaintiff had a pulmonary embolism from a blood clot that formed where they placed the main line during surgery. Plaintiff received CPR and was revived after being dead for over 4 minutes. He was transported by ambulance to San Joaquin Adventist Hospital, where an IVC filter was placed in the main line artery to prevent future blood clots from entering his lungs again. The incision became infected and Plaintiff had to change his ileostomy pouch almost every day because of open ulcerations by his stoma, which is painful. The ulceration lasted over 15 months. Plaintiff has been in a wheelchair because of weakness and back pain.

On September 11, 2018, Plaintiff was transferred back to NKSP in defendant Igbinosa's care. Plaintiff was given physical therapy for only three weeks, until the therapist's contract was up. From November 10, 2018 to November 17, 2018, Plaintiff had extreme diarrhea because of a bowel obstruction. A large hernia erupted, causing extreme pain. The correctional officers in the unit could not be summoned, and Plaintiff thought he was having a heart attack and passed out from the pain. When he awoken in the morning, the pain was gone but there was a bulge protruding just below his rib cage through a hole in his abdomen.

---

[1] Common abbreviation for deep vein thrombosis.

On November 23, 2018, Plaintiff suffered from a complete bowel obstruction and spent 6 days in the hospital with a suction tube down his nose for over three days. Dr. Moon [not a defendant] wanted to move the stoma to another location on Plaintiff's abdomen.

On January 10, 2019, Plaintiff was seen by Dr. Gandhi [not a defendant] in Oceanside, California. Dr. Gandhi said he could do the three needed surgeries. He told Plaintiff that hernias were common after having surgery. Defendant Igbinosa recommended that Plaintiff be transferred to Lancaster State Prison which handles chronic care and ADA inmates.

On February 14, 2019, Plaintiff was transferred to Solano State Prison in Vacaville, California, which is not a medical facility and is not equipped for ADA inmates. Plaintiff believes that defendants Ortiz (CCI), Rodriguez (CCRA), and William (HCARN Administrator) transferred him for retaliatory reasons. Right before the transfer Plaintiff's counselor asked him if he blamed NKSP for his medical issues, and Plaintiff said, "Yes, you people ignored my medical needs." Plaintiff believes he was transferred to a non-medical facility against his doctors' advice so he could endure more pain and suffering. At Solano State Prison Plaintiff had to visit the clinic over 100 times for wound care and other medical needs before his doctor transferred him across the street to California Medical Facility where he is now housed.

As of November 2019, Plaintiff is still under "chronic care" status and continues to suffer from an ulceration by his stoma. No surgery has been scheduled and Plaintiff suffers from chronic pain. On November 15, 2019, Plaintiff was transferred to San Joaquin General Hospital in Stockton, California where he met with two surgeons for consultation. The surgeons were surprised that Plaintiff was not on ulcerative colitis or Crohns medication. No surgeries can be done until the colitis is under control and in remission. Plaintiff was informed that he was guaranteed to get cancer and would need lots of follow up. It would be a year before Plaintiff's hernias could be properly addressed. The surgeons told Plaintiff that he has a long road to recovery with many risks involved, including death.

**Intimidation**

On July 29, 2018, Plaintiff submitted a grievance about medical conditions. When Plaintiff returned to NKSP in September 2018, after losing his lower intestines, he was

approached by defendant William, HCARN Administrator. Defendant William had rejected the grievance because of multiple grievances, and he told Plaintiff he could be disciplined for abuse of the grievance process. This was the only grievance that Plaintiff had submitted just before being rushed to the hospital. Plaintiff submitted the grievance because he had not received the antibiotics that were ordered by the doctor at TTA for a few days. This was also one of the reasons Plaintiff had to be rushed to the hospital where he almost died. Plaintiff was also approached by his counselor and asked if he was blaming NKSP for his medical issues. Plaintiff said, "Yes."

Plaintiff felt that he was being intimidated by the staff. He was placed in a cell where the light could not be turned off, and he put in multiple work orders to get it fixed during a 5-month period. It took the staff more than two weeks to get Plaintiff's property back after multiple requests and some of it was missing, and another inmate's property was mixed in with his. Plaintiff also made multiple requests to attend the law library but was only allowed to use it twice in 5 months. He was not allowed to make copies of certain legal documents and was limited in the number of copies.

Plaintiff believes he was transferred to Solano State Prison against medical advice out of retaliation because they knew he was filing a lawsuit against the staff and prison. Defendants knew that Plaintiff was on a "high risk medical hold," on "chronic care" status and in a wheelchair. The transfer slowed down Plaintiff's recovery and caused more pain and suffering than was necessary.

Plaintiff was also humiliated by defendant William who approached Plaintiff at his unit. William replied to another grievance saying, "What do you think, we have your intestines somewhere that we can put them back for you?"

Plaintiff will continue to be irreparably injured by the conduct of the Defendants and agents (William, Rodriguez, Santora, Ortiz, State of California, CDCR, and NKSP).

**Relief Requested**

As relief, Plaintiff request a declaration, compensatory damages, punitive damages, and costs of suit.

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles

the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.  Defendants State of California, CDCR, and NKSP – Eleventh Amendment

Plaintiff names the State of California, CDCR, and NKSP as defendants. The Eleventh Amendment bars suits against state agencies, as well as those where the state itself is named as a defendant, regardless of the relief sought. <u>See</u> <u>P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 144 (1993); <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>see also</u> <u>Dittman v. State of California</u>, 191 F.3d 1020, 1025-26 (9th Cir. 1999). CDCR is an agency of the state and is entitled to Eleventh Amendment immunity. <u>See</u>, e.g., <u>Gomes v. Mathis</u>, No. CV 17–7022, 2018 WL 2085237, at *3 (C.D. Cal. May 3, 2018). In addition, California prisons are entitled to Eleventh Amendment immunity. <u>Lopez v. Wasco State Prison</u>, 2008 WL 5381696, at *4 (E.D. Cal. Dec. 22, 2008) (citing <u>Keel v. California Dept. of Corrections and Rehabilitation</u>, 2006 WL 1523121, *2 (E.D. Cal. 2006)). Thus, defendants State of California, CDCR, and NKSP are entitled to Eleventh Amendment immunity and must be dismissed.

### B.  Supervisory Liability/Personal Participation

Plaintiff has named defendant Kelly Santora (Warden), who holds a supervisory position. Plaintiff is advised that "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. <u>Iqbal</u>, 556 U.S. at 676; <u>Corales v. Bennett</u>, 567 F.3d 554, 570 (9th Cir. 2009). Therefore, to the extent that Plaintiff seeks to impose liability upon any of the defendants in their supervisory capacity, Plaintiff fails to state a claim.

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676-77.

In the Complaint, Plaintiff sometimes refers to "Defendants" and alleges that "Defendants" collectively acted as if they did not care about Plaintiff's medical needs. To state a claim against a defendant, Plaintiff must demonstrate by using facts that each individual defendant, identified by name, personally acted or failed to act, violating Plaintiff's rights. Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" alleging how that defendant's actions led to, or caused, a deprivation of his constitutional rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor, 880 F.2d at 1045.

Plaintiff shall be granted an opportunity to amend the complaint, to address these issues.

### C. Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to

further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff has certainly shown that he has a very serious medical condition, and he may be able to state a medical claim against some of the above named defendants. However, Plaintiff must provide more information about what happened during his encounters with the individual Defendants. Plaintiff has not alleged facts demonstrating that each of the Defendants individually acted with deliberate indifference against him. To state a medical claim against a defendant, Plaintiff must name the defendant and describe in detail what happened, how the defendant personally acted or failed to act, causing violation of Plaintiff's rights to adequate medical care. The defendant's conduct must be egregious enough to state a claim under § 1983. Negligence or medical malpractice are not enough to state a claim, and Plaintiff must show that the named

defendant knew about his serious medical need, knew that the medical need placed Plaintiff at substantial risk of serious harm to his health, and yet ignored the risk, or act unreasonably in the face of the risk, resulting in injury to Plaintiff.

Therefore, currently, Plaintiff fails to state a medical claim under the Eighth Amendment against any of the Defendants. Plaintiff shall be granted leave to amend the complaint to cure the deficiencies in this claim discussed by the court.

### D. Due Process Claim – Prison Appeals Process -- Fourteenth Amendment

Plaintiff's allegations against some of the Defendants pertain to their review and handling of Plaintiff's inmate appeals. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who

knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that Defendants failed to properly process Plaintiff's appeals fails to state a cognizable claim.

### E.   Retaliation – First Amendment Claim

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Here, Plaintiff feels that he was being intimidated by prison staff. He was placed in a cell where the light could not be turned off, and he put in multiple work orders to get it fixed during a 5-month period. It took the staff more than two weeks to get Plaintiff's property back after multiple requests and some of it was missing, and another inmate's property was mixed in with his. Plaintiff also made multiple requests to attend the law library but was only allowed to use it twice in 5 months. He was not allowed to make copies of certain legal documents and was limited in the number of copies. Plaintiff also believes that defendants Ortiz (CCI), Rodriguez (CCRA), and William (HCARN Administrator) transferred him to Solano State Prison for retaliatory

reasons. Right before the transfer Plaintiff's counselor asked him if he blamed NKSP for his medical issues, and Plaintiff said, "Yes, you people ignored my medical needs." Plaintiff believes he was transferred to a non-medical facility against his doctors' advice so he could endure more pain and suffering. Plaintiff also alleges he was humiliated by defendant William who approached Plaintiff at his unit, and William replied to another grievance saying, "What do you think, we have your intestines somewhere that we can put them back for you?"

While Plaintiff has shown that Defendants took adverse actions against him, he has not shown a sufficient connection between the adverse actions and his participation in the prison grievance process or other conduct protected by the First Amendment. Plaintiff has not alleged *facts* demonstrating that Defendants acted against him *because* he filed grievances. Plaintiff has not established a causal connection between his protected conduct and the claimed adverse actions. The mere statement that Defendants "retaliated" against him or acted "in retaliation" is not sufficient in and of itself to state a claim. Moreover, Plaintiff has not named all of the individual Defendants he believes retaliated against him.

To establish a *prima facie* case, Plaintiff must allege and show that a named Defendant acted to retaliate *because of* Plaintiff's exercise of a protected activity, and that the Defendant's actions did not serve a legitimate penological purpose. Plaintiff has not done so. Accordingly, Plaintiff fails to state a cognizable retaliation claim.

Plaintiff shall be granted leave to amend the Complaint to address the deficiencies in this claim.

**F.     State Law Claims**

Plaintiff brings claims for negligence, malpractice, personal injury, and violation of the Bane Act. These are state law claims. Violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976);

also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).

Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In this instance, the Court fails to find any cognizable federal claims in the Complaint. Therefore, Plaintiff's state claims fail.

Plaintiff is also advised that the Government Claims Act requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); ); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has not done so.

### G. Declaratory Relief

Besides monetary damages, Plaintiff requests declaratory relief. Such request should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes, 408 F.3d at 565-66 n.8 (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

### V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the Complaint against any of the Defendants for violating his constitutional or other federal rights. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Plaintiff is granted leave to file a First Amended Complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).

Plaintiff is informed that the court cannot refer to a prior pleading in order to make Plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Complaint is DISMISSED for failure to state a claim, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a First Amended Complaint curing the deficiencies in his claims identified in this order;
4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:19-cv-01758-GSA-PC; and
5. Plaintiff's failure to comply with this order shall result in a recommendation that this action be dismissed in its entirety for failure to state a claim.

IT IS SO ORDERED.

Dated: **November 5, 2020**              **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE